In the Matter of the Appeal of Scott **WENGER from the Denial of Vocational Rehabilitation Services.**

No. C6–93–231.

Court of Appeals of Minnesota.

Aug. 24, 1993.

Review Denied Oct. 7, 1993.

Scott Wenger, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'r of Jobs & Training, Div. of Rehabilitation Services.

Considered and decided by PARKER, P.J., and LANSING and FLEMING, JJ.

## OPINION

WILLIAM J. FLEMING, Judge.*

The Department of Jobs and Training, Division of Rehabilitation Services (DRS),

* Retired judge of the district court, serving as     judge of the Minnesota Court of Appeals by

determined that relator Scott Wenger was eligible for rehabilitation services. The DRS and Wenger jointly developed a vocational goal which Wenger subsequently sought to amend. The DRS refused the requested amendment, concluding that Wenger's new goal would not likely lead to employment. Following a hearing, an administrative law judge affirmed the DRS' decision. The Assistant Commissioner of Jobs and Training adopted the ALJ's decision, and Wenger sought review by certiorari. We affirm.

## FACTS

Scott Wenger is 33 years old and has a Bachelor of Science degree in computer information systems. Wenger has a dysthymic disorder (depression) and a personality disorder with schizoid and paranoid features. Wenger has had difficulty maintaining employment, due to an inability to work with other employees.

In June 1991, Wenger applied to the DRS for rehabilitation services. John Schlichting, a rehabilitation counselor for the DRS, concluded that Wenger was eligible for rehabilitation services as a result of his disability.

In July 1991, Schlichting and Wenger jointly prepared an Individualized Written Rehabilitation Program (IWRP), indicating that Wenger's vocational goal would be to obtain employment as a computer programmer/analyst or related position.

In August 1991, Wenger's IWRP was amended. The amended IWRP stated that Wenger's vocational goal would be to obtain and maintain employment. That month, Wenger mentioned that he was considering leaving the computer field. Schlichting responded that any change in Wenger's employment goals should be related to his disability.

In February 1992, Wenger advised Schlichting that he did not want to work for anyone else and was interested in starting his own business. Schlichting referred Wenger to a small business class as a prerequisite to determine whether an amended IWRP, with a vocational goal of self-employment, would be feasible for Wenger.

In March 1992, Wenger informed Schlichting that he had begun a small business venture of advertising and marketing a motivational tape. The tape was a self-help tape, recorded by a professional reader. The intent of the tape was to advocate a new method of thinking. Wenger requested that the DRS fund a market test of the tape. Schlichting expressed concern that Wenger had incurred expenses without formulating a business plan or discussing his proposed business with the DRS. Schlichting denied Wenger reimbursement for previously-incurred expenses.

Wenger continued to request DRS assistance for his small business venture. Eventually, Wenger requested that his IWRP be amended to include the following vocational goals and assurances of DRS assistance:

To obtain and maintain self-employment.

(1) To receive a grant to successfully complete market testing for products and materials intended for sale to the public (and to be reimbursed for costs already incurred). Testing will continue until the plan is profitable.

(2) To receive technical and financial assistance and/or other support to secure financing for the business venture once market testing has concluded.

(3) To continue to meet regularly with DRS until such time as the business is self-supporting and enables me to live without dependency on Social Security disability income.

(4) To continue to receive ongoing technical and legal assistance to insure that my business meets county, state, and federal guidelines and is operating with all necessary permits and meets all other legal requirements.

Schlichting did not approve Wenger's request to amend the IWRP. Schlichting expressed numerous concerns with Wenger's proposed objectives. According to

appointment pursuant to Minn. Const. art. VI, § 10.

Schlichting, the content of Wenger's motivational tapes was unproven, and the tapes probably would not be helpful to anyone other than Wenger. Schlichting believed the method of thinking advocated by Wenger's tapes could be similar to what psychologists term "loose associations." Furthermore, Wenger had no "name" and no training or experience in the topics upon which he was purporting to be an expert. Wenger was unwilling to find a credible individual to endorse the tapes. In addition, Wenger had used a false name on his advertising literature, raising questions of fraud and truth in advertising. There was evidence that Wenger's second tape could not be sold because he had taken the script from someone else.

Schlichting pointed to statistics indicating an 80% failure rate of small businesses within the first year, and up to a 99% failure rate within the first five years. Schlichting was concerned that Wenger had incurred major financial liabilities without first doing any projections, suggesting that he could fail in a small business venture. Schlichting was also concerned that Wenger had begun working on new tapes before determining whether his first tape was marketable. Wenger had incurred debts totalling between $30,000 and $40,000, had no savings and bad credit, and was unwilling to get a job to attempt to finance his project. Wenger was also unwilling to find a partner or seek validation or advice from a publisher or other source. Schlichting was informed by small business consulting resources, including the Small Business Association and the Minnesota Small Business Development Center, that Wenger's tapes were not marketable and that his venture would fail.

Schlichting eventually proposed revising Wenger's IWRP to include the following vocational goal: "To determine whether DRS will assist in the development of a small business that Scott has proposed." Schlichting attempted to work with Wenger to amend his IWRP, but Wenger ultimately rejected Schlichting's proposals. Instead, Wenger requested a hearing on the issue whether the DRS could refuse to amend Wenger's IWRP to include his own preferred vocational goal.

An administrative law judge conducted a hearing, and received evidence from Wenger and the DRS. Following the hearing, the ALJ issued findings of fact and a decision affirming the DRS' refusal to recognize Wenger's requested vocational goal. The ALJ specifically found that Wenger's proposed business was not likely to lead to gainful employment. The Assistant Commissioner of Jobs and Training affirmed the ALJ's findings and decision.

## ISSUES

1. Was the DRS required to amend Wenger's IWRP to reflect Wenger's own preferred vocational goal?

2. Was the decision of the DRS supported by substantial evidence in the record?

3. Did the ALJ's decision contain reversible factual errors?

## ANALYSIS

### I.

The purpose of the Rehabilitation Act of 1973 is

> to develop and implement * * * comprehensive and coordinated programs of vocational rehabilitation and independent living, for individuals with handicaps in order to maximize their employability, independence, and integration into the workplace and the community.

29 U.S.C. § 701 (1988). Federal grants are awarded to states

> to meet the current and future needs of individuals with handicaps, so that such individuals may prepare for and engage in gainful employment to the extent of their capabilities.

*Id.* at § 720(a) (1988). "Individuals with handicaps" are disabled individuals who "can reasonably be expected to benefit in terms of employability from vocational rehabilitation services." *Id.* at § 706(8)(A) (1988). It is undisputed that Wenger is "disabled" for purposes of the program,

which is administered in Minnesota by the DRS. Minn.Stat. § 268A.03 (1990).

Wenger argues the DRS erred as a matter of law by refusing to amend his IWRP to reflect his own preferred vocational goal. Wenger points to language in the Rehabilitation Act and regulations promulgated thereunder, requiring that an IWRP must be developed based upon a determination of employability "designed to achieve the vocational objective of the individual." 29 U.S.C. § 722(b)(1)(A) (1988); 34 C.F.R. § 361.41(a) (1992). Neither the Rehabilitation Act nor the regulations, however, specifically state that a disabled individual has the right to determine his or her own vocational objective.

The Rehabilitation Act provides that an IWRP, which contains the individual's vocational goal, must be "developed jointly by the vocational rehabilitation counselor or coordinator and the individual with handicaps." 29 U.S.C. § 722(a) (1988). Any amendment to the IWRP must also be "jointly" decided. 34 C.F.R. § 361.40(c) (1992). This language suggests, but does not expressly state, that an individual's vocational goal must also be developed or amended jointly by the individual and the provider of services.

■ In *Buchanan v. Ives*, 793 F.Supp. 361 (D.Maine 1991), the court explained the standard of review when a state vocational rehabilitation agency has decided an issue that is not directly addressed by the Rehabilitation Act:

> If, however, the court determines Congress has not directly addressed the precise question at issue * * * then the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 364–65 (citing *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)).

■ We believe the DRS correctly construed the Rehabilitation Act when concluding that Wenger was not entitled to amend the IWRP to include his own choice of a vocational goal; rather, any amend-

ment of Wenger's vocational goal should have been decided jointly by Wenger and Schlichting.

Our conclusion is supported by the following language from *Buchanan:*

> The Plaintiff contends the Act should be interpreted to provide a client with the final right to choose his vocational rehabilitation goal, so long as it is within his capabilities.

> *     *     *     *     *     *

> However, "joint" participation does not mean giving a client the final or exclusive decision making authority to determine his own goal. The plain meaning of the word "jointly" indicates that the decision be made by at least two persons acting in concert. Although the client must be given every opportunity to participate in the decision-making, the rehabilitation counselor must make the final decision on eligibility and the scope of services provided.

*Buchanan,* 793 F.Supp. at 366.

## II.

The thrust of the Rehabilitation Act is to assist disabled individuals to become "employed." *See* 29 U.S.C. § 701. Vocational rehabilitation services provided under the Act "are any goods or services necessary to render an individual with handicaps employable." *Id.* at § 723(a) (1988). The Act's stated purpose is to assist such individuals and "maximize their employability, independence, and integration into the workplace and the community." *Id.* at § 701.

■ In the present case, the DRS refused to amend Wenger's IWRP to reflect a requested vocational goal that the DRS believed would not lead to employment. There is substantial evidence in the record supporting the DRS's determination that Wenger's requested goal would not lead to employment. *See* Minn.Stat. § 14.69 (1990) (under administrative procedure act, reviewing court should determine whether agency's decision is "unsupported by substantial evidence in view of the entire record as submitted"); *In re Appeal of*

*Jongquist,* 460 N.W.2d 915, 916 (Minn.App. 1990) (review of DRS's decision is governed by the administrative procedure act).

The *Buchanan* court stated:

> The client's own values and goals, the economy and the potential market for the client's skills should all be considered in determining the level of services to be provided.

*Buchanan,* 793 F.Supp. at 366. In the present case, the DRS properly concluded. that Wenger's current skills were not consistent with his requested goals. The DRS considered Wenger's computer skills and remained willing to provide rehabilitation services in that area. In addition, the DRS was willing to explore the possibility of eventually assisting Wenger with his requested self-employment goal. Wenger, however, was unwilling to cooperate with the DRS' process.

### III.

Wenger claims the ALJ erred by characterizing him as an "applicant" for rehabilitation services because he has been issued a certificate of eligibility for those services. Wenger, however, is not entitled to rehabilitation services in the absence of an IWRP jointly adopted by Wenger and the DRS. *See* 29 U.S.C. § 722(a), (b). Since Wenger and the DRS have not agreed on an amended IWRP, the ALJ did not err by characterizing Wenger as an applicant for services.

Wenger also argues the ALJ erred by finding that he had decided to sell his tapes under the name "New Age" tapes, when he had actually designated the tapes as "New Level" tapes or "New Level Industries." The ALJ's minor error in word choice has no bearing upon the ultimate decision and does not constitute a basis for reversal. *See McDonald v. Whipps,* 137 Minn. 450, 452–53, 163 N.W. 746, 747 (1917).

Wenger also claims the ALJ's decision fails to reference certain facts cited by Wenger in his opening statement. Wenger's opening statement was not transcribed for purposes of this appeal, and therefore is unreviewable. *See Stevens v. Stevens,* 367 N.W.2d 553, 555 (Minn.App. 1985) (where parties fail to make transcript available on appeal, review is limited to partial record).

### DECISION

The DRS properly refused to recognize Wenger's requested vocational goal where there was substantial evidence that Wenger's goal was not likely to lead to gainful employment.

**Affirmed.**