## Robert Zingher v. Department of Aging and Disabilities

[664 A.2d 256]

No. 94-175

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 16, 1995

*Richard J. Whitaker*, Vermont Protection & Advocacy, Montpelier, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Michael O. McShane*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Johnson, J.** Petitioner appeals from a decision of the Human Services Board, claiming the board erred in concluding that the services provided to him by the Division of Vocational Rehabilitation complied with the Rehabilitation Act, 29 U.S.C. §§ 701-797, and with a previous order of the board. We affirm.

Petitioner received a master's degree in business administration in 1987. He also passed an examination to be certified as a public accountant but has been unable to obtain employment to fulfill the two-year internship requirement. Petitioner is a disabled individual, who had been diagnosed with a learning disability, dysthymia and

obsessive-compulsive personality disorder, hypertension, obesity and noninsulin-dependent diabetes. As a result of his disabilities, petitioner required five years to complete his master's degree and twice the usual amount of time to complete the public accountant exam.

Petitioner applied for the services of the Vermont Division of Vocational Rehabilitation in April 1990. The division determined that he was eligible in October 1990 and provided petitioner with a rehabilitation plan. Petitioner rejected this plan because it did not provide remedial services for his learning disability, adaptive equipment he feels necessary to obtain employment, or sufficient assistance with job placement. He appealed to the Human Services Board. The board concluded that the plan was inadequate and remanded the case to the division to amend the plan by (1) accurately describing petitioner's learning disability and the impact it has on employment; (2) offering services to remedy limitations caused by the learning disorder; (3) offering placement services with greater counselor assistance; and (4) assigning a counselor knowledgeable in learning and emotional disorders. The board denied petitioner's request for specific computer equipment, estimated to cost $40,000, because petitioner failed to show that it was necessary for him to obtain and retain employment.

Following the board's order, the division assigned an experienced vocational rehabilitation counselor and an accommodation team composed of experts in computer technology, learning disabilities and accounting. It also amended the plan to include an overview of petitioner's learning disability, personality disorders and medical problems. The new plan provided for psychological counselling, neurolinguistic sessions, interview training, job placement and job follow-up. Petitioner signed the new plan with several noted reservations.

Between July 1992 and April 1993, petitioner received ten sessions of neurolinguistic training, ten sessions of psychological counselling, and forty-five hours of counselling on interview techniques and resume writing. In addition, the division hired a computer expert to evaluate petitioner's need for compensatory hardware and software. The expert concluded that computer hardware and software should not be purchased until petitioner obtained employment because the compensatory equipment would need to be tailored to the individual job site. He also recommended training and practice on the software that petitioner already owns because petitioner seemed unaware of its capabilities. Finally, the expert warned against purchasing additional

software, which would require more learning time and increase petitioner's stress level.

In February 1993, petitioner began volunteer work as an accountant with a small business. At that time, the division paid for a vision exam, eyeglasses, work clothes and shoes for him. In early April 1993, the owner of the business hired petitioner as an accountant and financial manager. The division then assigned an experienced vocational evaluator to determine the compensatory equipment and services necessary for petitioner to retain the position. The evaluator determined that petitioner had difficulty with interpersonal relations; thus, the division provided ten more sessions of neurolinguistic training.

At the end of April, the computer expert met with petitioner, his employer and the site evaluator to determine petitioner's equipment needs. The computer system of the business was at that time inadequate, and the employer was developing a plan to purchase a new system. On May 25, 1993, the expert submitted a report detailing the standard accounting hardware and software the employer was to provide and recommended that the division purchase compensatory equipment compatible with the job site and the new system to be purchased by the employer. Petitioner had some objections to the report, and a revised report was issued June 16, 1993.

The division attempted to set up a meeting with the employer to ensure that he intended to purchase the computer system compatible with the compensatory equipment requested. Petitioner objected to the meeting because he felt that the employer knew nothing about computers. The meeting was therefore delayed until July 8, 1993. Thereafter, the compensatory equipment was ordered; however, the record does not indicate whether the employer purchased the new computer system or what specific compensatory equipment the division ordered.

On July 22, 1993, petitioner returned to work after a brief absence. The compensatory equipment was expected by the end of the week, but petitioner was dismissed from his position and the order was cancelled. The employer indicated that he dismissed petitioner because petitioner's financial vision was "too high powered for a small business." He explained that petitioner wanted to conduct financial analyses that required equipment too expensive for the business to purchase and unnecessary for financial success.

Petitioner filed a grievance with the board, alleging that the division had failed to implement the board's first order. The board dismissed

the grievance as unfounded and petitioner appeals, alleging the board erred by failing to apply the standard set forth in 29 U.S.C. § 701, and by failing to enforce its previous order.

## I.

Before reaching the merits of petitioner's claim, we address the division's argument that res judicata bars relitigating the necessity of purchasing computer equipment prior to petitioner obtaining a position. The division maintains that the board determined in its first order that petitioner had failed to show that computer equipment was necessary for him to obtain or retain employment, that petitioner failed to appeal this conclusion, and that petitioner is therefore precluded from relitigating this issue.

■■ "The doctrine of res judicata provides that a valid and final judgment in favor of one party bars another action by the other party on the same claim." *Delozier v. State*, 160 Vt. 426, 429, 631 A.2d 228, 229 (1993). Res judicata applies to final determinations by an administrative agency acting in a judicial capacity. See *id.* at 429, 631 A.2d at 230. It is not, however, applicable here. In its first order, dated March 26, 1992, the board concluded that "petitioner's request that he be granted specific computer equipment and remedial courses totalling about $40,000.00 should be denied *at the present time* because the petitioner has yet to show that any of those services are necessary to his obtaining and retaining employment." (Emphasis in original.) The plain language of the order leaves open the possibility of reviewing the matter again and is, therefore, not a final agency determination.

■ Moreover, after the board issued the first order, the division reviewed previous diagnostic information regarding petitioner's learning disability, revised the rehabilitation plan to include an accurate description of the learning disability and consulted with an expert on learning disabilities. In addition, the division consulted with experts in accounting and computers. As a result, there was significantly more information available on the issue of petitioner's need for computer software and hardware at the time of the second hearing. Finally, as the computer expert noted, the quality and capabilities of computer equipment increase rapidly and the cost of equipment decreases over time. All of these facts indicate that it is inappropriate to apply res judicata to this claim.

## II.

■ In reviewing the merits of a case appealed from the Human Services Board, we will not set aside findings unless clearly erroneous, see *Hall v. Department of Social Welfare*, 153 Vt. 479, 486, 572 A.2d 1342, 1346 (1990), and we give deference to a determination of the board within its area of expertise. See *In re Bushey-Combs*, 160 Vt. 326, 329, 628 A.2d 541, 543 (1993). Petitioner's two main arguments are: (1) the failure to provide petitioner the computer hardware and software that he requests, absent a specific job site, violates 29 U.S.C. § 701; and (2) the failure to provide petitioner the computer software and hardware in a timely fashion after he obtained employment violated the board's first order.

## A.

■ ■ The purpose of the Rehabilitation Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C.A. § 701(b)(1) (West Supp. 1995). The Rehabilitation Act authorizes grants to states to provide vocational rehabilitation to individuals with disabilities. *Buchanan v. Ives*, 793 F. Supp. 361, 363 (D. Me. 1991). State participation is voluntary, but those states choosing to participate must comply with federal regulations. *Id.* The purpose of the vocational rehabilitation program of the Act is to assist states in providing "services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, and capabilities, so that such individuals may prepare for and engage in gainful employment." 29 U.S.C.A. § 720(a)(2) (West Supp. 1995).[1] The scope of vocational services provided is defined in 29 U.S.C.A. § 723(a) (West Supp. 1995), which states: "Vocational rehabilitation services provided under this chapter are any goods or services *necessary* to render an individual with a disability employable . . . ." (Emphasis added.)

Petitioner maintains that the division refuses to provide assistance prior to petitioner obtaining employment and refuses to provide the

---

[1] Petitioner quotes from a superseded statute, which stated that the purpose of the federal grants was "to assist States to meet the current and future needs of individuals with handicaps, so that such individuals may prepare for and engage in gainful employment *to the extent of their capabilities .*" 29 U.S.C. § 720(a) (1988), *amended by* Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, § 121, 106 Stat. 4344, 4365-67 (1992) (emphasis added by petitioner).

computer hardware and software, and extended counselling, that would greatly enhance his employability. The record does not support petitioner's first claim. Substantial services were provided prior to his employment, including neurolinguistic training, psychological counselling, and interview and resume-writing training. The essence of petitioner's second claim is that his employability will only be "maximized," consistent with the purpose of the Rehabilitation Act, if he is able to offer a potential employer at the initial interview the comprehensive computer system he requests. Indeed, the central dispute in this case is whether the division is required to provide petitioner with the basic computer equipment necessary to an accountant plus the compensatory equipment necessary for petitioner to use it or only the compensatory equipment compatible with an accounting system running in his place of employment.

■ We disagree with petitioner that the statement of purpose of the Rehabilitation Act requires the division to "maximize his employability," *id.* § 701(b)(1), without regard to financial considerations. The case on which petitioner relies states that it is appropriate to consider cost in providing services in an efficient manner once the client's goals have been defined. See *Buchanan*, 793 F. Supp. at 364. Petitioner has presented no evidence to refute the computer expert's conclusion that it is appropriate to defer purchasing computer equipment until there is a specific work site.[2] Although the computer system requested may enhance petitioner's employability, petitioner has not shown that such a system is *necessary* for him to be employed. See 29 U.S.C.A. § 723(a) (requiring division to provide goods and services necessary to render individual with disability employable).

■ We uphold the board's determination that it is appropriate for the division to provide compensatory equipment in the context of a specific job site. Without knowing the equipment the employer already has in place, the space petitioner will occupy, and the specific duties assigned, the division cannot assess the compensatory equipment necessary for petitioner to do the job.[3]

---

[2] Petitioner estimated the cost of the equipment to be $30,000 at the time of the first hearing and between $10,000 and $20,000 at the time of the second hearing.

[3] A comprehensive accounting computer system, such as petitioner requests, is consistent with the goal of self-employment, which has never been the goal of petitioner's rehabilitation plan.

## B.

Petitioner next argues that the division failed to provide compensatory computer software and hardware after he obtained employment and thereby violated the board's first order. He maintains that he was employed for five months and never received the equipment he needed to retain the position. Although petitioner is correct that he did not receive any computer equipment during the five-month period of employment, the record establishes that (1) he was not dismissed because the division failed to provide adequate support but rather because his employer did not agree with his financial vision for the business, and (2) the division was not entirely at fault for the equipment delay.

The lengthy delay in ordering equipment was due in part to the employer's uncertain plan to obtain a new computer system and the division's desire to ascertain the new system prior to purchasing compensatory equipment. Petitioner caused further delay because he objected to the meeting with his employer intended to ensure that the employer was committed to purchasing the new system. Finally, we note that no finding was ever made that the employer purchased the new system. The length of the division's delay in delivering petitioner's equipment should be measured from the time the employer acquired the new system for which the compensatory equipment was required. The findings are inadequate to make this determination.

Nonetheless, we agree with petitioner that equipment necessary for petitioner to do the job must be provided promptly. It took a full month after petitioner began as a paid employee before the computer expert met with him, and then nearly another month before the expert issued the report to which petitioner objected. Any delay in obtaining equipment necessary for petitioner to do the job will jeopardize a position he succeeds in securing.

Finally, petitioner argues that the board erred in relying on testimony presented by the division indicating that it had spent far more on services for petitioner than it ordinarily provides to a vocational rehabilitation client. The finding to which petitioner objects states: "The Department has, to date, spent over $6,000.00 to purchase services and goods under the [revised plan], and has waived its usual limits, at times, when necessary." We find no error. The testimony refuted petitioner's assertion that he had received no services to realistically compensate him for his disabilities prior to or

after obtaining employment, and the finding counters petitioner's assertion that the division's only concern is cost.[4]

*Affirmed.*

---

[4] Petitioner also argues that the division improperly relied on the employer's obligation to make reasonable accommodations for an employee with a disability under the Americans with Disabilities Act (ADA). See 42 U.S.C.A §§ 12101-12213 (West Supp. 1995). He maintains that the division is not relieved of its statutory duty to provide necessary goods and services where the ADA requires an employer to make reasonable accommodations. We do not reach this issue. Neither the record nor the findings support petitioner's contention that the division denied any specific equipment or service because it expected the employer to provide it pursuant to the ADA.