[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this appeal from a final decision of the Bureau of Rehabilitation Services ("BRS") of the State of Connecticut, Department of Social Services ("DSS") adopting the recommended decision of a fair hearing officer issued April 30, 1998. This appeal is brought under the authority of the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§4-166 et seq., 4-183.
The plaintiff suffers from depression, alcoholism and back problems. In March of 1986, he requested services from the BRS and by letter dated May 13, 1996, he was determined to be eligible for services. A dispute developed between the plaintiff and BRS over tuition assistance to attend the University of Hartford for a Bachelor of Arts in Engineering. BRS held a fair hearing on November 14, 1997, December 5, 1997 and January 20, 1998. The plaintiff appeared at the hearing, was represented by legal counsel and was afforded an opportunity to present evidence and argue his claims. The hearing officer determined that Mr. Vail was presently employable and was not entitled to services beyond assistance with job seeking skills. (Return of Record ("ROR"), Volume 1, pp. 2-11.) On May 1, 1998, the hearing officer's decision was adopted and accepted as the final decision of DSS.
The plaintiff filed a timely appeal on June 15, 1998. The DSS filed the answer and record on August 14, 1998. The plaintiff filed his brief on November 3, 1998 and the DSS brief was filed on January 19, 1999. Parties were heard in oral argument on May 19, 1999.
This case involves the application of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. This act establishes a program that authorizes the federal government to provide grants of assistance to states that choose to CT Page 6647 participate. Connecticut has chosen to participate and the Bureau of Rehabilitation Services of the Department of Social Services as a state agency empowered to provide assistance under this program. See General Statutes § 17b-651 and 17b-658.[1] The purpose of the Rehabilitation Act of 1973 is "to develop and implement comprehensive and coordinate programs of vocational rehabilitation and independent living, for individuals with handicaps in order to maximize their employability, independence, and integration into the workplace and community."[2] A mandatory provision of the Rehabilitation Act is that once an eligibility determination is made that for each eligible applicant an individual written rehabilitation program ("IWRP") be "jointly developed, agreed upon, and signed by . . . such eligible individual., and the vocational rehabilitation counselor or coordinator. . . ." Rehabilitation Act of 1973, 29 U.S.C. § 722
(b)(1)(A)(i)[3] The federal regulations limit financial services including financial assistance sought by the plaintiff to cases in which an IWRP has been properly completed.34 C.F.R. § 361.44; see also Regs., Conn. State Agencies §10-102-15; Appeal of Wenger, 504 N.W.2d 794 (Minn.App. 1993).
In Appeal of Wenger, the applicant, as in this case, was a disabled person for purposes of the act, but failed to obtain an IWRP. The court held: "Wenger, however, is not entitled to rehabilitation services in the absence of an IWRP jointly adopted by Wenger and the DRS [Department of Rehabilitation Services]."Appeal of Wenger, supra, 504 N.W.2d 799 The Wenger
court relied on the federal district court decision Buchanan v.Ives, 793 F. Sup. 361 (D. Maine 1991) in which the joint development feature of the IWRP was affirmed. In that case, the court held: "The Plaintiff contends the Act should be interpreted to provide a client with the final right to choose his vocational rehabilitation goal, so long as it is within his capabilities. . . . However, "joint' participation does not mean giving a client the final or exclusive decision making authority to determine his own goal. The plain meaning of the word "jointly' indicates that the decision be made by at least two persons acting in concert. Although the client must be given every opportunity to participate in the decision-making, the rehabilitation counselor must make the final decision on eligibility and the scope of services provided." Buchanan v.Ives, supra, 793 F. Sup. 366. This case is undisputed in that there Was no individual written rehabilitation program or IWRP.
In the instant case, the plaintiff also failed to take CT Page 6648 advantage of a review process provided by General Statutes §17b-654. See also Regs., Conn. State Agencies § 10-102-20. In addition to an informal administrative review of IWRPs provided in General Statutes § 17b-654 (a), the plaintiff could have requested a formal hearing pursuant to § 17b-654 (b). See also Regs., Conn. State Agencies § 10-102-21. This the plaintiff failed to do. The regulations specifically prohibit financial assistance in the absence of an IWRP.[4]
The hearing officer also found that the plaintiff was employable without the educational program which he sought at the University of Hartford. "The thrust of the Rehabilitation Act is to assist disabled individuals to become employed." Appeal ofWenger, supra, 504 N.W.2d 798. "Vocational rehabilitation services provided under the Act are any goods or services necessary to render an individual with handicaps employable." (Citations omitted; internal quotation marks omitted.) Zingher v. Departmentof Aging Disabilities, 664 A.2d 256, 259 (Vt. 1995). In theZingher case, the plaintiff sought assistance under the Rehabilitation Act with respect to the purchase of computers which he would use in an accounting job. In upholding the denial of such assistance, the Vermont Supreme Court concluded: "Although the computer system requested may enhance petitioner's employability, petitioner has not shown that such a system isnecessary for him to be employed." (Emphasis in original.) Id., 259-60. In the present case, the hearing officer determined that Mr. Vail is employable with his present skills, an Associate's Degree in Engineering, and therefore, it is not necessary for Mr. Vail to obtain the desired Bachelor's Degree in Engineering. The plaintiffs claims under the Rehabilitation Act fail.
The plaintiff also claims in his brief that the BRS decision was arbitrary, capricious, and an abuse of discretion. At the outset, the court notes the "standard of review for all of the plaintiff's claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its CT Page 6649 discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny., the agency is not entitled to special deference . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dett, of Social Services.49 Conn. App. 432, 436 (1998).
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court., to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
The following findings of fact, which are supported by substantial evidence, are more than sufficient to support the reasonableness of the BRS decision:
 (8) At the January 21, 1997 meeting Mr. Vail further stated that he came to BRS seeking employment and continuing education, and admitted he was not sure of his goals. He also expressed reservations about his academic abilities, particular in the area of math, including calculus. . . . CT Page 6650
 (10) In late January 1997 Mr. Vail expressed concern about trouble he was having in school, both with reading and with math, arising, he believed, from his head injury. He agreed to have a neuropsychological evaluation.
 (13) Dr. Cassens report revealed that Mr. Vail had an I.Q. in the average range, significant difficulty concentrating and retaining written/verbal material, and his arithmetic abilities were in the low average range, or eighth grade equivalent. Noting that Mr. Vail had spoken to her about taking Law School Aptitude Test, Dr. Cassens commented that "[i]t is unclear at this time whether attending law school is realistic given his neuro psychological profile . . .
 (20) Mr. Vail also presented to BRS a transcript of work he had taken at the University of Hartford, together with 21.66 credits granted by the University for his work at Hartford State Technical College. The course work taken at the University of Hartford over eight semesters and two summer terms yielded a total of 58 course hours and a cumulative grade point average of 1.75. . . .
 (25) Patricia Malloy, a BRS Human Resources Specialist and Rehabilitation Counselor with 27 years of experience, discussed Mr. Vail's search for employment with him. She stated that he was interested in "anything related to construction technology." She also conducted a limited job survey in Connecticut, and concluded that there are a number of jobs available for which Mr. Vail is presently qualified.
(ROR, Volume I, pp. 4-5.)
The court finds that substantial evidence in the record supports the BRS decision that the BA Engineering Degree from the University of Hartford was not an appropriate vocational goal for Mr. Vail. Accordingly, the decision of the BRS is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.