**Bruce BUCHANAN, Plaintiff,**

v.

**H. Rollin IVES, et al., Defendant.**

**Civ. No. 90–0321–B.**

United States District Court,
D. Maine.

Nov. 1, 1991.

Donna J. Senkbeil, Maine Advocacy Services, Winthrop, Me., for plaintiff.

Marina E. Thibeau, Asst. Atty. Gen., Augusta, Me., for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, Bruce Buchanan, brings this action against H. Rollin Ives, as the Commissioner of the Maine Department of Human Services and Pamela A. Tetley, as the Director of the Maine Bureau of Rehabilitation within the Department of Human Services, alleging that the Defendants have unlawfully denied him services and benefits to which he is entitled under the Rehabilitation Act of 1973, as amended ("Rehabilitation Act" or "Act"). 29 U.S.C. § 701 *et seq.* Plaintiff alleges that Defendants violated the Act by: (1) failing to provide him rehabilitation services according to his individual need, (2) refusing to provide services to maximize his employability and (3) not allowing him to chose a vocational goal consistent with his capacity and ability. This matter is now before the Court on cross motions for judgment on a stipulated written record. The Court has jurisdiction pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

## I. BACKGROUND

Plaintiff is orthopedically disabled due to work-related injuries. These injuries and subsequent surgeries have resulted in cervical spine fusion, lumbro-sacral strain and fusion, spinal arthritis and scoliosis and a ruptured right arm bicep. Buchanan is unable to bend, stoop, or crawl, lift repetitively more than 26 pounds, or do any physical labor. Plaintiff applied for rehabilitation services in December 1988 and was accepted as a client of the Maine Bu-

reau of Rehabilitation ("Bureau") on February 14, 1989. Thereafter, Plaintiff, together with his vocational counselor, drafted an Individual Written Rehabilitation Plan ("IWRP") as required by the Act. 29 U.S.C. § 722. The plan set out a vocational goal of a self-employed commercial photographer and outlined the services the Bureau would provide. On March 31, 1989, the Bureau obtained an evaluation of the Plaintiff's proposal from Peter Burbank, the Department's small business consultant. Based upon Burbank's negative recommendation, the Bureau denied the Plaintiff's request for services related to his self-employment goal. An administrative review upheld the Bureau's decision. Plaintiff then reduced the amount of financial support requested and asked for a Fair Hearing to be held on the matter. In response the Bureau obtained a second evaluation of the Plaintiff's proposal. While this second evaluation was favorable to the Plaintiff, the Bureau maintained its denial of rehabilitation services. A Fair Hearing was held and a recommended decision favoring the funding of the Plaintiff's proposal was issued on July 30, 1990.[1] On September 7, 1990, Defendant Tetley notified the Plaintiff that she would not abide by the hearing officer's recommendation and would instead uphold the Bureau's denial of funding. Plaintiff then filed a review action in state court under the Administrative Procedures Act, 4 MRSA § 1151 *et seq.*, in accordance with Maine Rule of Civil Procedure 80C. The state court action has been stayed pending this Court's actions.

Specifically, the Plaintiff has requested this Court to declare:

(1) Defendants' state policy to provide rehabilitation services "as cost effectively as possible," to be in violation of the Rehabilitation Act when applied at any time during Defendants' determination of a client's rehabilitation needs, goals, or services provided;

(2) that the Act requires the Defendants to maximize a client's employability;

(3) that the Act gives clients the right to choose their own vocational goal as long as it is consistent with their capacities and abilities; and

(4) that the placement of a client in any job which requires less ability, skill and experience than that possessed by the client, is a placement which is beneath and not consistent with the client's capacities and abilities.

In addition, Plaintiff has requested a permanent injunction requiring the Defendants to provide further rehabilitative assistance as needed by the Plaintiff toward the achievement of his vocational goal of self-employed commercial photographer and specifically requiring Defendants to fund Plaintiff's business proposal. The Plaintiff also seeks the award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## II. THE REHABILITATION ACT

■ The Rehabilitation Act authorizes federal grants to states to assist the states in providing vocational rehabilitation services to individuals with handicaps. State participation in the program is voluntary, but if a state chooses to participate it must comply with federal guidelines and regulations governing the Act. *See Florida Department of Health and Rehabilitation Services v. Califano*, 449 F.Supp. 274, 276–277 (N.D.Fla.), *aff'd*, 585 F.2d 150 (5th Cir. 1978). In fiscal year 1991, Congress appropriated up to 1.875 billion dollars for the program. 29 U.S.C. § 720(b)(1)(C).

■ The purpose of the Rehabilitation Act is "to develop and implement, through research, training, services, and the guarantee of equal opportunity, comprehensive coordinated programs of vocational rehabilitation and independent living, for individuals with handicaps in order to *maximize their employability, independence, and integration into the work place and the community.*" 29 U.S.C. § 701 (Supp.1991) (emphasis added). "Employability" is de-

---

**1.** This was actually the second fair hearing, the first having been overturned and remanded for procedural inadequacies.

fined as "a determination that with the provision of vocational rehabilitation services, the individual is likely to enter or retain, as a primary objective, full-time employment, or if appropriate, part-time employment, *consistent with the capacities or abilities of the individual in the competitive labor market;* the practice of a profession; self-employment; homemaking; ... or other gainful work." 34 C.F.R. § 361.1 (1991) (emphasis added). The purpose of Title I of the Act, the section which outlines state rehabilitation programs is "to authorize grants to assist states to meet the current and future needs of individuals with handicaps, so that such individuals may prepare for and engage in *gainful employment to the extent of their capabilities."* 29 U.S.C. § 720 (emphasis added).

### III. ANALYSIS

#### 1. The State's Policy

Defendant Tetley based her decision to deny funding, at least in part, upon a finding, pursuant to the State's Vocational Rehabilitation Services Manual § 1, that there were "other vocational options, consistent with [Plaintiff's] capacities and abilities, which ... *are achievable at much lower cost than providing the cost services necessary to start self employment* as a photographer." Certified Record, Tab 23C (emphasis added).

■ The Plaintiff contends that the State's policy of providing rehabilitation services "as cost effectively as possible," Maine Vocational Rehabilitation Policy Manual § 1, violates the Act if applied at any time in the determination of vocational goals, needs or services provided. To the extent that the State's policy can be read as applying a cost efficiency analysis to the determination of a client's goals and needs, all parties agree that it is in violation of the Act. Economic factors shall not be read into the Act with regard to these two stages of the process. On the other hand, it is not inappropriate for a state to consider cost in providing services to an individual in an efficient manner once a client's goals and needs have been defined. A director may, therefore, consider economic factors in implementing services designed to reach a client's maximum potential, but "cost efficiency analysis" must not be used as the major determinant upon which to deny funding of services. It is the Defendants' obligation under the Act to provide services "appropriate to the vocational needs of each individual." 34 C.F.R. § 361.42.

#### 2. Maximization

The purpose of the Rehabilitation Act is "to develop and implement, through research training, services, and the guarantee of equal opportunity, comprehensive coordinated programs of vocational rehabilitation and independent living, *for individuals with handicaps in order to maximize their employability, independence, and integration into the work place and the community."* 29 U.S.C. § 701 (Supp. 1991) (emphasis added). The emphasized language was added in 1986. Pub.L. No. 99–506, 100 Stat. 1807, 1808 (1986).

Plaintiff argues that the 1986 amendments created an affirmative obligation upon participating states to provide assistance to individuals with handicaps so that they may achieve their maximum vocational potential. Defendants, on the other hand, read the amendment to require the provision of services and training adequate to lead to "suitable employment."

Our review of the Director's interpretation of the Act is governed by the two-step test promulgated by the Supreme Court in *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

When a Court reviews an agency's construction of the statute which it administers it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise

question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrator's interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, then the question for the court is whether the agency's answer is based on a permissible construction of the statute. *Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

In reaching its conclusion the Court examines the statute's language, history and purpose. *Id.* at 843 n. 9, 104 S.Ct. at 2781 n. 9. "Only *if* our analysis determines that the intent of Congress is ambiguous do we then address the question of whether [the Director's interpretation] 'is based on a permissible construction of the statute' ". *Commonwealth of Massachusetts v. Yeutter*, 947 F.2d 537, 541 (1st Cir.1991) (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782).

On its face, Section 701 requires a state to "maximize" the employability of individuals with handicaps. While "maximize" is not defined in the statute, it is commonly understood to mean "to increase to the utmost extent." Webster's Third New World Dictionary (1991). "Absent a clearly expressed legislative intention to the contrary, [the plain meaning] will ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Defendants contend that in adding "maximize" the Committee simply intended to urge states to place their clients in full-time employment, rather than part-time employment, whenever possible. A reading of the legislative history compels a contrary conclusion.[2] While full-time employment was indeed one of the areas addressed by the 1986 amendments, it was clearly not Congress' primary mission in amending § 701. Congress' intention was much more broad than merely

imposing a preference for securing full-time employment. The legislative history shows that the new language was instituted to clarify the overall purpose of the act in assisting individuals with handicaps *"in reaching their highest level of achievement."* S.Rep. No. 388, 99th Cong., 2d Sess. 5 (1986) (emphasis added). By adding "maximize" to § 701, Congress was clearly stating its intent to establish a program which would provide services to assist clients in achieving their highest level of achievement or a goal which is consistent with their maximum capacities and abilities.

Defendants argue that the correct terminology in defining the level of services to be provided is "suitable employment." Presumably Defendants are inferring that the use of the term "suitable" in the federal regulations, *see*, 34 C.F.R. §§ 361.39(k), 361.42(a)12), 361.43(a)(4), is inconsistent with "maximizing employability." While "suitable" may indeed be the correct terminology, it has no independent meaning within the statute. "Suitable" is a relative term which cannot, by itself, provide the legal standard against which to determine the level of services which will be provided. "Suitable" must be interpreted in reference to the goal of "maximizing employability". If the services provided do not maximize employability, they cannot be "suitable."[3]

■ The determination of a client's maximum employability requires a highly individualized analysis, that should take into account the client's goals as determined by the IWRP and, within reason, the client's highest possible level of achievement. The IWRP may then be analyzed to determine whether that program is viable for that individual given his unique circumstances and the realities of the competitive labor market. This may mean that in one case, maximization of a client's employability might require providing an advanced university education while in another it may

---

**2.** Where Congress has expressed it's intent the Court will not defer to an agency's interpretation that is not consistent with that intention. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988).

**3.** To the extent that the Director places reliance on a pre–1986 memorandum from RSA in order to interpret the meaning of maximization as requiring the provision of only entry level employment, such an interpretation is inconsistent with the Act.

only require job retraining or placement assistance. The key in each case, however, is that the determination must be highly individualized.

### 3. Choice of a Vocational Goal

■ The Plaintiff contends the Act should be interpreted to provide a client with the final right to choose his vocational rehabilitation goal, so long as it is within his capabilities. For this proposition Plaintiff cites 29 U.S.C. § 722(a) and 34 C.F.R. § 361.40(a) (1990) which require that the IWRP "be developed jointly" by the vocational rehabilitation counselor and the individual with the handicap. The Plaintiff argues that the use of the term "jointly" implies equal participation and involvement on the part of the client and counsellor in the development of an IWRP. The Court does not disagree. However, "joint" participation does not mean giving a client the final or exclusive decision making authority to determine his own goal. The plain meaning of the word "jointly" indicates that the decision be made by at least two persons acting in concert. Although the client must be given every opportunity to participate in the decision-making, the rehabilitation counselor must make the final decision on eligibility and the scope of services provided. 34 C.F.R. § 361.31, 29 U.S.C. § 722(d). If the client is dissatisfied with the result he may request either an informal or formal administrative review. 34 C.F.R. § 361.48(c). The Act is properly interpreted to allow for input from the client while reserving the final decision making authority with the counselor and the Director.

### 4. Placement Within Capacity

■ Finally, the Plaintiff requests this Court declare the placement of a client in any job which requires less ability, skill and experience than that possessed by the client, to represent a placement which is not consistent with his capabilities and abilities.

"Employability," as defined in the federal regulation, means "a determination that, with the provision of vocational rehabilitative service, the individual is likely to enter or retain, as a primary objective ... *employment consistent with the capacities or abilities of the individual* in the competitive labor market ...". 34 C.F.R. § 361.1 (1991) (emphasis added).

"Employability," particularly when read in light of the requirement of maximization, simply cannot be equated with the ability to be employed at any job. "Consistent" is not an inclusive term. An objective that is in a job classification or occupational specialty which is clearly below the individuals capabilities is not "consistent" with that person's capabilities, nor could it be considered "suitable" employment. It was not the intent of Congress to place individuals with handicaps at *any* entry level merely to liberate clients from public assistance.

However, the Act should not be interpreted to require that in every case the client's optimum level be reached. The client's own values and goals, the economy and the potential market for the client's skills should all be considered in determining the level of services to be provided.

## IV. PERMANENT INJUNCTION

Plaintiff's request for a permanent injunction is hereby DENIED. The case is REMANDED to the Director for further proceedings consistent with the opinion herein.