*480
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 This case distills to a narrow question of statutory interpretation of the seminal Federal Rehabilitation Act of 1973. The crux of the dispute is appellant Murphy’s quest to have the Office of Vocational and Educational Services for Individuals with Disabilities (VESID) reimburse her for some of the costs of her now-completed law school education. We agree with VESID and the courts below that, under the circumstances of her case, the benefits she qualified for (and received) do not extend that far. Thus, we affirm the order of the Appellate Division.
 

 In 1994, VESID determined that Murphy was entitled to a special benefits program as an individual with disabilities, due to an accident that left her unable to perform any bi-manual activity without pain (see, Rehabilitation Act of 1973, 29 USC § 701
 
 et
 
 seq.) (the Act). This Federal program is administered in New York through the State Education Department’s Office, commonly denominated VESID.
 

 Pertinent law requires each enrollee to agree with VESID on a plan of particularized services and action to determine appropriate vocational rehabilitation needs and benefits. Accordingly, Murphy and VESID crafted a jointly developed Individualized Written Rehabilitation Program (IWRP). VESID’s services to Murphy were.designed to include its sponsorship of and assistance for the remainder of her undergraduate education, which Murphy had previously commenced at Columbia College. This aspect of the program was fulfilled, and is not at issue in this case.
 

 
 *481
 
 After the development of the IWRP and prior to the completion of her undergraduate program, however, Murphy was also accepted at Syracuse University Law School. She then requested that VESID amend her IWRP to reflect a revised employment goal as an attorney. She also wanted VESID to pay for her law school education. VESID rejected this request for enhanced benefits, and its determination was upheld at the administrative level, after a fair hearing. The Deputy Commissioner for Vocational and Educational Services for Individuals with Disabilities next declined to review the VESID decision.
 

 Murphy then turned to the courts seeking relief through this combined CPLR article 78 proceeding and declaratory judgment action. She now appeals, by this Court’s grant of leave, from the Appellate Division’s order affirming Supreme Court’s award of judgment in favor of VESID. The judgment essentially declared that VESID is not required to provide Murphy with this financial level of vocational services by paying costs associated with her law school education.
 

 The dispositive issue here is whether New York’s VESID, pursuant to the Federal Act and its State implementation, must provide services to a recipient of benefits, for as long as the beneficiary has not yet attained optimal employment. Stated conversely, the question is whether the requisite standard of service is met when the recipient is aided to the point, level and degree that allows the opportunity for personal attainment of maximum employment. We are satisfied that the purpose of the Act is served when this latter defined standard is fulfilled.
 

 The plain language of the Act supports the conclusion that appellant is not entitled to the funding she seeks for her law school education, paid by VESID. Further, the legislative development of the Act’s current provisions confirms the plain reading approach we adopt to decide this case. It is clear to this Court that the realistic and laudable legislative goal is to empower eligible individuals with the opportunity to access their maximum employment, not to provide individuals with idealized personal preferences for actual optimal employment.
 

 I.
 

 The Act establishes a program that authorizes the Federal Government to provide grants of assistance to States that choose to participate. A stated purpose of the Act is to “empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion
 
 *482
 
 and integration into society” through various features of the program
 
 (see, 29
 
 USC § 701 [b] [1]). The Federal grants are also meant to “assist States in operating a comprehensive, coordinated, effective, efficient, and accountable program of vocational rehabilitation that is designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, and capabilities, so that such individuals may prepare for and engage in gainful employment” (29 USC § 720 [a] [2]).
 

 Federal regulations and policy directives related to the enforcement of the Act are promulgated by the United States Department of Education Office of Special Education and Rehabilitative Services. Vocational rehabilitation services are “any goods or services necessary to render an individual with a disability employable” (29 USC § 723 [a];
 
 see also,
 
 34 CFR 361.48). An applicant becomes eligible for the services when classified as an “individual with a disability”
 
 (see, 29
 
 USC § 706 [8]), and when one requires “vocational rehabilitation services to prepare for, enter, engage in, or retain gainful employment” (29 USC § 722 [a] [1] [B];
 
 see,
 
 34 CFR 361.42). The “employment outcome” should be a job that is “consistent with an individual’s strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice” (34 CFR 361.5 [b] [15]).
 

 New York State has opted into the Federal fountainhead, through the Vocational Rehabilitation Law
 
 (see,
 
 Education Law § 1001
 
 et seq.).
 
 Pursuant to our State’s statute, VESID administers Federally funded vocational rehabilitation programs and promulgates rules and regulations necessary to implement the State law (Education Law § 1004; 8 NYCRR part 246
 
 et seq.).
 

 In accordance with Federal requirements, VESID must develop, jointly with each eligible beneficiary, an IWRP that is designed to access that individual’s particular employment objective, consistent with the candidate’s unique strengths, resources, priorities, concerns, abilities and capabilities
 
 (see,
 
 29 USC § 722; see
 
 also,
 
 34 CFR 361.45; 8 NYCRR 247.10). The IWRP must include a statement of the applicant’s long-term rehabilitation goals. This should include an assessment of career interests, an expression of the specific vocational rehabilitation services to be provided, and a personal description of how the individual was informed about and involved in making the choice among alternative goals, objectives, services, enti
 
 *483
 
 ties supplying rehabilitation services, and methods used to provide or procure these services (see, 29 USC § 722 [b]; 34 CFR 361.46 [a]; 8 NYCRR 247.10 [c]).
 

 II.
 

 Murphy’s 1994 IWRP indicated her employment goal as “Legal Services and Related.” The justification section, as completed by the VESID counselor, stated, “Ms. Murphy has completed 78 hours toward a Bachelor’s degree * * * Her long term goal is to complete academic requirements and the bar exam to become an attorney. Short term goal is to work in the area of legal services.” The intermediate objectives to reach her goal included, “Completion of at least 24 credit hours towards a Bachelor’s degree in History and Government by 5/95 with a GPA of 2.0 or better.” Significantly, Murphy noted the following in her own comments section of the IWRP:
 

 “I explained to Ms. Robinson that I hoped to attend law school. We decided that the-best way to achieve my ultimate goal was to obtain my bachelor’s degree and then work in a related field, preferably a local law firm, while saving money for further education.”
 

 Thus, it seems clear from the beginning of Murphy’s participation in the VESID program that she not only expected to attend law school but also agreed and understood that its funding was her personal responsibility.
 

 At Murphy’s fair hearing, VESID introduced its written policy that no services beyond the baccalaureate level need be provided unless (1) the client requires graduate training in order to enter the profession which is an appropriate, IWRP agreed upon, vocational goal; or (2) the severity of the disability limits the client’s ability to function in an appropriate entry level job while simultaneously completing additional training at the graduate level required to maintain the job. The Hearing Officer expressly found that the stated objective of a Bachelor’s Degree was arrived at fairly and satisfactorily, that no indication of mutual agreement to postgraduate education was present in the IWRP, and that the evidence was insufficient to suggest that Murphy was so disabled as to be unable to work in a law-related field.
 

 Murphy has been urging that, under the Federal Act, she is entitled to an amended or expanded IWRP that results in her goal of actual employment as an attorney, and that she should
 
 *484
 
 receive vocational rehabilitation services until she has made this goal a reality. Throughout these proceedings and on appeal before this Court, she has asserted that an overly restrictive legal standard has been applied because the Act should not be limited to merely “placing her in a position” to become an attorney. VESID contends that its interpretation and application of the law, as upheld by both lower courts, has been entirely proper because the statute emphasizes and targets an individual’s improved opportunity to access meaningful and gainful employment, not actual achievement of optimal employment. The nuances and interpretation of these competing articulations present a pivotal difference between the theoretical and practical positions of the parties now before us in this particular case.
 

 III.
 

 The key inquiry to decide this controversy brings us back to whether Congress has expressly spoken to the precise circumstance
 
 (see, Chevron U.S.A. v Natural Resources Defense Council, 467
 
 US 837, 842). When the intent of Congress is clear, the pertinent agency, and then the courts, too, must give effect to an unambiguously enacted and promulgated intent
 
 (id.,
 
 at 842-843;
 
 see also, Matter of Scotto v Dinkins,
 
 85 NY2d 209;
 
 Matter of Sutka v Conners,
 
 73 NY2d 395).
 

 Here, the intent of Congress, bearing on the resolution of this dispute, emerges from the words of the statute, as originally enacted, as well as from the evolution of the amendments currently in effect. The Act is sprinkled with references to providing “opportunities” for “meaningful” and “gainful” employment to individuals with disabilities. It nowhere guarantees actual optimal employment.
 

 Notably, a primary purpose of the Act is to “assist [ ] States and providers of services in fulfilling the aspirations of * * * individuals with disabilities for
 
 meaningful and gainful
 
 employment?’ (29 USC § 701 [b] [2] [emphasis added]). Further, “the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to * * * achieve
 
 equality of opportunity
 
 * * * employment * * * and economic and social self-sufficiency” (29 USC § 701 [a] [6] [B] [emphasis added]). Additionally, “[individuals with disabilities must be provided the
 
 opportunities to obtain gainful employment”
 
 (29 USC § 720 [a] [3] [B] [emphasis added]). Very relevantly, “increased employment of individuals with disabilities can be achieved through * * *
 
 meaningful opportuni
 
 
 *485
 

 ties
 
 for employment in integrated work settings through the provision of
 
 reasonable accommodations”
 
 (29 USC § 701 [a] [4] [emphasis added]).
 

 Appellant’s arguments do not satisfy her statutory interpretation burden to support her desired outcome, that her particular rehabilitation program must provide, guarantee or continue until optimal employment is actually secured. In her efforts to obtain this added level of benefits, appellant places unavailing reliance on a 1986 United States Senate Report. The Report stated that the over-all purpose of the Act is to develop and implement rehabilitation programs for disabled individuals which will “maximize their employability” and assist them “in reaching their highest level of achievement”
 
 (see,
 
 S Rep No. 388, 99th Cong, 2d Sess 5 [1986]). Appellant also points to
 
 Matter of Polkabla v Commission for Blind & Visually Handicapped of N. Y. State Dept. of Social Servs.
 
 (183 AD2d 575), which applied this same snippet of Senate exhortation when the Appellate Division ruled that the State was required to provide services to a blind paralegal who wanted to obtain an undergraduate and legal education. First, the aspirational rhetoric regarding “highest level of achievement” is not a standard expressed in the Act itself. In addition, the Appellate Division’s reasoning in
 
 Polkabla
 
 is distinguishable in part because it was decided just prior to the 1992 amendments — the latter even removed the statutory language relied on by that court when it held that VESID must “maximize”
 
 “employability” (see, id.,
 
 at 576 [emphasis added]). Finally, we agree that the determination of whether a particular program is suitable for a candidate is a highly individualized decision that must be made on a case-by-case basis
 
 (see, Buchanan v Ives,
 
 793 F Supp 361, 365-366). The factors in this case do not qualify appellant for the assistance she sought.
 

 The Joint Explanatory Statement of the Committee of Conference on the 1992 amendments also helps to buttress our understanding of the overriding purpose and policy of section 701:
 

 “With different wording, both the House bill and the Senate amendment specify that the purpose of the Act is to maximize employment, economic self-sufficiency, independence, and integration and inclusion of individuals with disabilities. The House amendment uses the term ‘maximize’ and the Senate use [sic] the term ‘empower’ * * * The House
 
 *486
 
 recedes to the Senate with an amendment to section 2 (b) of the Act, as added by the Senate bill, striking ‘achieve’ and inserting ‘maximize employment,’ before ‘economic self-sufficiency’ ” (HR Conf Rep No. 973, 102d Cong, 2d Sess 154 [1992]).
 

 Thus, while the Act contains the “maximize employment” language to which appellant adverts, Congress deliberately chose to implement a qualification standard that required an “empowerment” toward, rather than “achievement” of, “maximum employment”
 
 (see, id.).
 

 Next, the House bill sought to add that the Act “provide comprehensive employment opportunities” and “direct the provision of traditional rehabilitation services to recognize and acknowledge career choices”
 
 (see, id.).
 
 These purpose statements, however, were not agreed to by the Senate and, therefore, never became part of the law
 
 (see, id.).
 

 Lastly in this regard, the early policy statement for title I of the Act (§ 720
 
 et seq.),
 
 provided that the title’s purpose was to allow individuals with disabilities to “prepare for and engage in gainful employment * * *
 
 to the extent of their capabilities”
 
 (HR Conf Rep No. 973,
 
 op. cit.,
 
 at 164 [emphasis added]). The language that is now found in section 720, however, is from the 1992 Senate version of amendments, which eliminated the phrase “to the extent of their capabilities”
 
 (see, id.).
 

 These invocations of the Act’s statutory purpose and policy statements manifest to us a determined Congressional intent to set some realistic boundaries to the scope of the Act, including specifically, empowerment of individuals by “providing them with the tools” and placing them in a position, competitive to that of nondisabled peers, so they might have the equal opportunity to achieve “maximum employment”
 
 (see,
 
 29 USC §§701, 720). It has been cogently noted that in “providing the empowerment necessary for [a recipient] to ultimately achieve maximum employment as generally provided for by the stated purposes of the Rehabilitation Act, there is no requirement that VESID sponsor every possible credential desired by petitioner”
 
 (Matter of Romano v Office of Vocational & Educ. Servs. for Individuals with Disabilities,
 
 223 AD2d 829, 830). Indeed, we agree that “the Act should not be interpreted to require that in every case the client’s optimum level be reached”
 
 (Buchanan v Ives,
 
 793 F Supp 361, 366 [D Me 1991], supra;
 
 Stevenson v Commonwealth of Pa., Dept. of Labor & Indus.,
 
 167 Pa Commw 394, 648 A2d 344).
 

 
 *487
 
 Here, the record supports findings and inferences that, in accordance with the goals and plans set forth in her IWRP, appellant has been assisted in gaining access to employment in the agreed-upon field of legal services, to the point of being employable competitively with nondisabled persons. Indeed, when Murphy requested that her IWRP be amended to reflect her more definitive vocational goal of going to law school to become an attorney, she did not request assistance, such as note-taking services, related to her disability. Rather, her fair hearing form request indicated that, with respect to her law school education, she sought solely financial assistance for tuition, fees, books and transportation costs (see,
 
 Matter of Romano v Office of Vocational & Educ. Servs. for Individuals with Disabilities, supra
 
 [distinguishing
 
 Polkabla
 
 because the record in
 
 Romano
 
 did not show that achievement of the IWRP goals would not adequately empower the petitioner to ultimately reach her higher goals];
 
 see also, Zingher v Department of Aging & Disabilities,
 
 163 Vt 566, 664 A2d 256 [denying requested assistance where the petitioner did not show that a special computer system was necessary for him to be employed];
 
 compare, Matter of Chirico v Office of Vocational & Educ. Servs. for Individuals with Disabilities,
 
 211 AD2d 258,
 
 lv denied
 
 86 NY2d 705 [holding that VESID was required to purchase a special dictation device that was found necessary for the petitioner’s employment]). While IWRPs are not to be treated as frozen in time and effect for all purposes under the Federal Act and its State effectuation and administration, they are entitled to significant weight, relevance and cogency since they are expressly required by the Act and reflect mutually agreed upon objectives and means as between the parties.
 

 IV.
 

 Finally, Murphy argues that the Appellate Division incorrectly referred to VESID’s limited appropriations, in connection with the decision denying the particular vocational rehabilitation services enhancement she sought, and that VESID would have had to implement an Order of Selection in order to deny her funding on that ground. It is plain to us, however, that when an individual’s goals and needs have been defined, as they were in this case, the agency may appropriately factor in the cost of providing services within the prescribed procedural framework
 
 (see, Buchanan v Ives,
 
 793 F Supp 361,
 
 supra; Zingher v Department of Aging & Disabilities,
 
 163 Vt 566, 664 A2d 256,
 
 supra).
 
 This proper consideration of economic factors
 
 *488
 
 with respect to an individual’s IWRP is distinguished from an Order of Selection which considers the funding available to an individual, relative to all other eligible applicants.
 

 Indeed, it is VESID that makes the final decision with respect to the contents of the IWRP, including the listed goal, eligibility and the scope of services to be provided
 
 (see, Buchanan v Ives, supra,
 
 at 366). “Joint” participation in developing the IWRP does not mean giving eligible applicants final or exclusive decision making authority to determine their own goals
 
 (see, id.).
 
 Analogously, VESID should have the same final authority with respect to determining whether an IWRP can be amended to change the previously jointly agreed upon goal. Accordingly, it was not inappropriate for VESID to refuse further funding for Murphy under the circumstances of this matter.
 

 Further, the statutory purpose proclaims that the Act seeks to empower individuals to maximize their employment, which unquestionably contemplates the Act’s benefits and fiscal resources, as being disbursed to a host of people. If the courts were to absolutely foreclose VESID’s consideration of this facet, the theoretical ramification might be that VESID could consider itself precluded from equitably disbursing its limited funds in a given fiscal year. That complication might deny the promise of the Act to qualified individuals with disabilities. As highlighted by the
 
 amicus
 
 brief, unemployment among the disabled is rising, and these needy individuals are entitled to their proportionate share of governmental financial aid. Thus, no justification is presented on this record for the courts to preclude, as a matter of law, the agency’s legislatively delegated consideration, allocation and administration of finite funds, generally or in the determination of the instant matter.
 

 We have considered all of appellant’s other arguments and conclude that they lack merit. Before concluding, we note also that respondent’s mootness argument is unpersuasive in the context and circumstances of this case.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, without costs.