Jill DOLON, Appellant–Petitioner,

v.

FAMILY AND SOCIAL SERVICES ADMINISTRATION DIVISION OF DISABILITY, AGING AND REHABILITATIVE SERVICES, Cheryl Sullivan, in her official capacity as Secretary of the Family and Social Services Administration, Bobby L. Conner, in his official capacity as Director of the Division of Disability, Aging, and Rehabilitative Services, Appellees–Respondents.

No. 18A05–9808–CV–433.

Court of Appeals of Indiana.

Aug. 30, 1999.

---

Milo G. Gray, Jr., Gary W. Ricks, Nicole L. Smith, Indiana Protection and Advocacy Services, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Kathryn Janeway, Office of Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge

Petitioner–Appellant Jill Dolon ("Jill") appeals the decision of Respondent–Appellee Family and Social Services Administration, Aging and Rehabilitative Services ("FSSA"), and the trial court's affirmance of that denial. Also named as parties are Respondents–Appellees Cheryl Sullivan, in her official capacity as Secretary of FSSA, and Bobby L. Conner, in his official capacity as Director of the Division of Disability, Aging, and Rehabilitative Services. We reverse and remand with instructions.

Jill has been determined to be disabled on the basis of functional limitations and vocational impediments arising from Fibromyalgia, a condition caused by a 1992 automobile accident. Jill also suffers from an adjustment disorder with emotional features. On November 18, 1993, Jill applied to FSSA for vocational rehabilitation services, and she was certified as eligible for such services on February 8, 1994.

An Individual Written Rehabilitation Plan (IWRP) was developed by Jill and her vocational rehabilitation counselor, Cheryl Hoffher, which identified "Photography Production/Media" as Jill's vocational rehabilitation goal. The plan approved the accomplishment of this goal through attendance at a California institution, Brooks Institute of Photography, because there was no Indiana institution providing the required training. In discussing the development of the plan, Hoffher informed Jill that she would be limited by FSSA's "Service Cost Guidelines" to assistance of $1,000.00 for occupational tools, supplies, and equipment. Believing the cost guideline to be "set in stone," Jill agreed to the $1,000.00 limit.

Jill later discovered that she could receive approval for amounts in excess of the $1,000.00 limit. Because she believed the cost for equipment and supplies at Brooks Institute was well in excess of the guideline limit, Jill requested that Hoffher approve additional funds. Hoffher refused, and Jill requested an administrative hearing on the issue of "the amount of funding [FSSA] will provide for photography equipment that is absolutely necessary for me to have in order to complete my schooling at Brooks Institute of Photography." (R. 133). After a hearing, the hearing officer issued "findings of fact" and a conclusion of law in an attempt to support her decision to deny Jill's request. Bobby L. Conner, in his official capacity as Director of the Division of Disability, Aging, and Rehabilitative Services, later entered a final order in which he adopted the hearing officer's findings and decision. On judicial review, the trial court affirmed the final order. We now review the propriety of the order and the findings adopted therein.

■ FSSA, through its Division of Aging and Rehabilitative Services, is the administrative agency charged with the duty of administering the program of vocational rehabilitation services for the handicapped in Indiana. In administering the program, FSSA is governed by the Rehabilitation Act of 1973, as amended (the "Act"). The Act establishes a program that authorizes the federal government to provide grants of assistance to States that choose to participate. A stated purpose of the Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society" through various features of the program. 29 U.S.C. § 701(b)(1). The federal grants are meant to "assist States in operating statewide comprehensive, coordinated, effective, efficient, and accountable programs of vocational rehabilitation" which are "designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with [the individuals'] strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that such individuals may prepare for and engage in gainful employment." 29 U.S.C. § 720(2)(B). While participation by a State in the federal grant program is voluntary, those States which elect to receive federal funds must comply with federal guidelines and regulations promulgated pursuant to the Act. See *Buchanan v. Ives*, 793 F.Supp. 361, 363 (D.Me.1991).

The question of the propriety of FSSA's guideline limit is governed by at least three

regulatory provisions which relate to the Act's purposes of insuring. that States provide individualized treatment to those disabled persons who rely upon the State's program for assistance. First, is 34 C.F.R. § 361.50, which provides that "[t]he written policies [of the State agency] may not establish any arbitrary limits on the nature and scope of vocational rehabilitation services to be provided to the individual to achieve an employment outcome." Second, is 34 C.F.R. § 361.50(2), which provides that "[t]he State unit may establish a fee schedule designed to ensure a reasonable cost to the program for each service, provided that the schedule is— (i) [n]ot so low as to effectively deny an individual a necessary service; and (ii)[n]ot absolute and permits exceptions so that individual needs can be addressed." Finally, is 34 C.F.R. § 361.50(3), which provides that "[t]he State unit may not place absolute dollar limits on specific service categories or on the total services provided to an individual."

The relationship between the individualized treatment mandated by the Act and the worthy goal of a State to provide cost efficiency is examined in *Buchanan*. There, the court held that a State may not apply cost efficiency analysis to the determination of a client's goals and needs. 793 F.Supp. at 363. The court also held that, "[o]n the other hand, it is not inappropriate for a[S]tate to consider cost in providing services to an individual in an efficient manner once a client's goals and needs have been defined." *Id.* Accordingly, the court held that a State may "consider economic factors in implementing services designed to reach a client's maximum potential, but 'cost efficiency analysis' must not be used as the major determinant upon which to deny funding or services." *Id.* The court further held that it is the State's "obligation under the Act to provide services 'appropriate to the vocational needs of the individual.'" *Id.* (*quoting* 34 C.F.R. § 361.42).

In *Schornstein v. New Jersey Division of Vocational Rehabilitation Services*, 519 F.Supp. 773, 778 (D.N.J.1981), *aff'd*, 688 F.2d 824 (3d Cir.1982), the court emphasized that "[b]oth the language and the legislative history of the Act make clear that participating [S]tates are required to develop programs designed to meet the particular needs of each qualifying handicapped person." The court held that the agency's blanket policy denying interpreter services to all deaf students "completely contradicts the Act's requirements which ensure individualization of programs for handicapped individuals." *Id.* at 779. The court then addressed the question of whether the agency had the discretion to deny services to the individual client, "even if it may not exclude all deaf students *per se*." *Id.* The court noted that an agency "may, if it wishes, 'consider the financial need of handicapped individuals for purposes of determining the extent of their respective participation in the costs of vocational rehabilitation services....'" *Id.* at 780. The court noted, however, that if an agency "pursues this course it must establish a written policy specifying the types of services to which an 'economic needs' test will be applied." *Id.* The court held that the agency, "having accepted plaintiff as a client, and having conceded that plaintiff requires interpreter services to meet her vocational goals, is obligated to provide those services." *Id.*

Similarly, in *Scott v. Parham*, 422 F.Supp. 111, 113 (N.D.Ga.1976), the court emphasized that the provision of rehabilitation services which are tailored to each individual's needs is "[o]ne of the paramount goals of the Act." The court held that although the agency's blanket policy on maintenance costs was "administratively convenient" and "otherwise rational," it "rob[bed] the Georgia vocational rehabilitation program of its required flexibility." *Id.*

■ In the present case, the service cost guidelines indicate that "[a]mounts exceeding these guidelines must be justified by the counselor and approved by the Area Supervisor." (R. 143). Accordingly, it is theoretically possible to obtain additional funds to reach an agreed-upon, individualized goal.

■ We now turn to the hearing officer's findings. Initially, we note that a trial court reviewing an administrative agency's determination does not have the power to enter findings of fact. *Moore v. Indiana Family and Social Services Administration*, 682 N.E.2d 545, 547 (Ind.Ct.App.1997). Accord-

ingly, we will disregard the trial court's findings and instead will review the hearing officer's findings of fact as adopted by the Director and affirmed by the trial court. These findings of fact and conclusion form the crux of our review.

▪ Judicial review of agency decisions is governed by Ind.Code § 4–21.5–1–1 et seq. When a trial court reviews an agency's decision, the court is bound by the agency's findings of fact that are supported by the record. *Bennett v. Indiana Life and Health Insurance Guaranty Association,* 688 N.E.2d 171, 176 (Ind.Ct.App.1997). An agency's determination of questions of law is not accorded the same type of deference. *Id.*

▪ An agency's findings must include findings of basic fact which support the findings of ultimate fact and conclusions of law. *Hunt v. Shettle,* 452 N.E.2d 1045, 1047 (Ind. Ct.App.1983). Findings must reveal the agency's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim. *Perez v. United States Steel Corp.,* 426 N.E.2d 29, 33 (Ind.1981). Furthermore, "findings" which merely indicate that a particular source stated a particular fact are not proper findings of fact. *Moore,* 682 N.E.2d at 547. A finding of fact "must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Id.*

Here, the hearing officer defined the issue before her as whether it was proper to deny any costs beyond the service cost guidelines. (R. 153). The hearing officer found that Jill and Hoffher had developed and signed an IWRP with "a vocational goal of photography production/media." (Finding # 3, R. 153). The hearing officer also found that Jill was "provided with written information on the IWRP referenced above that the plan did not constitute financial obligation and that financial assistance to be provided by [FSSA] will be determined in accordance with agency policy." (Finding # 5, R. 153–54). The hearing officer further "found" that "an equipment and supply list for motion picture class dated 2/17/95 (facsimile) lists items totaling $13,000 " and that "Johnetta Dolan [sic], testifying on behalf of Jill Dolan [sic],

stated that additional costs for equipment and supplies would be incurred in future classes." (Findings # 8 and # 9, R. 159). The hearing officer then concluded that "based upon the facts established and proven . . . [FSSA] was justified in the denial of costs associated with tools, supplies and equipment in excess of the service cost guideline of $1,000.00 per client." (R. 159).

▪ We cannot determine from these "findings" whether Jill had established that the requested equipment and supplies were necessary and/or properly documented, or whether such evidence of necessity and documentation was even required at that stage of the proceedings. We also cannot determine whether Jill was required to or did establish the necessity of the future costs. Furthermore, we cannot determine whether the hearing officer's conclusion was based on an unexpressed belief that (1) the requested equipment and supplies were unnecessary and/or undocumented, or (2) that individualized treatment was overridden by concerns of cost efficiency and a blanket application of the guideline limit. As our discussion above indicates, the second basis is improper.

▪ Upon remand, the issue of cost efficiency may arise. Accordingly, we briefly address the issue. FSSA cites *Buchanan* and *Murphy v. Office of Vocational and Educational Services for Individuals with Disabilities,* 92 N.Y.2d 477, 683 N.Y.S.2d 139, 705 N.E.2d 1180, 1184 (1998) for the proposition that an agency "may appropriately factor in the cost of providing services within the agency's guidelines." Appellee's Brief at 8. It is true that an agency may factor in cost; however, this factor must be read in the context of the federal regulations which prohibit both the utilization of an arbitrary or absolute limit and the utilization of a limit which is so low as to effectively deny an individual a necessary service. The upshot of these cases is that, absent a written "economic needs" policy, the agency must provide the necessary funds to allow the client to achieve the agreed-upon goal, and any limitations based upon cost-efficiency are appropri-

ate only where the goal can be attained.[1] For example, the funds provided to Jill could be limited to the amount necessary to achieve the agreed-upon goal at an institution which is more cost-effective than Brooks Institute. The key is to provide the assistance necessary to allow the client to achieve the goal, which in this case is training from an appropriate institution.[2]

In conclusion, we hold that the hearing officer's findings of fact are insufficient to facilitate review. Accordingly, we reverse with instructions that the hearing officer enter appropriate findings. We therefore reverse the judgment of the trial court, and remand to the trial court with instructions that it remand this case to FSSA.

RILEY, J., and MATTINGLY, J., concur.

---

1. The parties agree that FSSA has no written "economic needs" policy. Such a policy must meet the rigorous requirements of applicable federal regulations. See e.g., 34 C.F.R. § 361.42.

2. We agree with the court in *Murphy* that "there is no requirement that [an agency] sponsor every possible credential desired by [a client]." 92 N.Y.2d 477, 683 N.Y.S.2d 139, 705 N.E.2d at 1184.