# FILED

**November 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT NASHVILLE**

_____

|                                              |     |                                      |
| -------------------------------------------- | --- | ------------------------------------ |
|                                              | )   |                                      |
| **PETER TRUSS**,                             | )   | Davidson County Chancery Court       |
|                                              | )   | No. 98-1551-I                        |
|   Plaintiff/Appellant,             | )   |                                      |
|                                              | )   | C.A. No. M1999-01317-COA-R3-CV       |
| VS.                                          | )   |                                      |
|                                              | )   |                                      |
| **STATE OF TENNESSEE**                       | )   |                                      |
| **DEPARTMENT OF HUMAN**                      | )   |                                      |
| **SERVICES**,                               | )   |                                      |
|                                              | )   |                                      |
|   Defendant/Appellee.              | )   |                                      |
|                                              | )   |                                      |

_____

From the Chancery Court of Davidson County at Nashville.
**Honorable Irvin H. Kilcrease, Jr., Chancellor**

**Gary Buchanan**, Nashville, Tennessee
Attorney for Plaintiff/Appellant

**Paul G. Summers**, Attorney General and Reporter
**E. Blaine Sprouse**, Assistant Attorney General
Attorneys for Defendant/Appellee

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**KOCH, J.**: (Concurs)

Plaintiff Peter Truss appeals an order of the chancery court upholding a decision of Defendant State of Tennessee Department of Human Services ("Department") regarding the level of benefits to which he is entitled under the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Act"), 29 U.S.C.A. §§ 701-96k (1999 & Supp. 1999). For the reasons set forth below, we affirm the ruling of the chancery court.

Under the Rehabilitation Act, participating states such as Tennessee receive federal grants to assist them in providing rehabilitative services to individuals with disabilities. *See Buchanan v. Ives*, 793 F. Supp. 361, 363 (D. Me. 1991); *Murphy v. Office of Vocational and Educ. Servs. for Individuals with Disabilities, New York State Educ. Dep't*, 705 N.E.2d 1180, 1181 (N.Y. 1998); *Zingher v. Department of Aging and Disabilities*, 664 A.2d 256, 259 (Vt. 1995). If a state accepts such a grant, it is required to comply with federal guidelines and regulations governing the Act. *See Buchanan*, 793 F. Supp. at 363 (citing *Florida Dep't of Health and Rehabilitative Servs. v. Califano*, 449 F. Supp. 274, 276-77 (N.D. Fla.), *aff'd*, 585 F.2d 150 (5th Cir. 1978)); *Zingher*, 664 A.2d at 259. In May of 1997, Mr. Truss filed an application with the Department seeking rehabilitative services.[1] Thereafter in September of 1997, Mr. Truss completed an "Individualized Written Rehabilitation Program," a plan that established a goal for Mr. Truss of employment in the field of

computer animation. In furtherance of this goal, the parties agreed that Mr. Truss would enroll in a two year associate degree program at the Art Institute of Atlanta ("AIA") and that the Department would sponsor Mr. Truss's studies at a rate not to exceed the tuition rate of the University of Tennessee at Knoxville ("UTK").[2]

During an informal administrative review of the Department's decision by one of its field supervisors, Mr. Truss requested that the Department pay his educational expenses based on the tuition rate charged by AIA rather than the rate charged by UTK. In support of this request, Mr. Truss argued that there are no schools in Tennessee comparable to AIA that offer a degree program in graphic arts. The field supervisor found, however, that the Department had previously determined that Roane State Community College ("Roane State") offers a comparable program in graphic arts. Accordingly, the field supervisor upheld the Department's decision to sponsor Mr. Truss at the tuition rate charged by UTK. Mr. Truss then requested a more formal review of the Department's decision. After a full hearing on the matter, the hearing officer found that the program offered by Roane State would enable Mr. Truss to meet his goal of employability in the field of computer animation. Accordingly, like the field supervisor, the hearing officer upheld the decision of the Department, concluding that the Department acted properly in limiting Mr. Truss' sponsorship to the tuition rate charged by UTK. Mr. Truss then filed a petition with the chancery court seeking further review of the Department's decision. After a hearing on the matter, the chancellor issued a memorandum opinion finding that the decision of the Department is supported by substantial and material evidence and is not arbitrary or capricious. Consistent with this ruling, an order was subsequently entered incorporating the chancellor's memorandum opinion and dismissing Mr. Truss' appeal. This appeal followed.

The sole issue on appeal is whether the chancery court erred in upholding the Department's determination that, under the Rehabilitation Act, Mr. Truss is entitled to receive assistance at the tuition rate of UTK rather than the higher tuition rate of AIA. Under the Uniform Administrative

Procedures Act, a final decision of a state agency such as the Department may be reversed or modified if the findings, inferences, conclusions, or decisions made by the agency are (1) in violation of a statute or constitution, (2) in excess of the agency's statutory authority, (3) made upon unlawful procedure, (4) arbitrary or capricious or characterized by an abuse or clearly unwarranted exercise of discretion, or (5) unsupported by substantial and material evidence. *See* Tenn. Code Ann. § 4-5-322(h) (1998). *See also Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 809-10 (Tenn. 1995); *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977). When reviewing findings of fact made by a state agency, we must uphold the findings so long as they are supported by substantial and material evidence in the record. *See Humana*, 551 S.W.2d at 667-68; *Goldsmith v. Roberts*, 622 S.W.2d 438, 439 (Tenn. Ct. App. 1981). The agency's construction of a statute and application of the law to the facts of the case involve questions of law. *See Sanifill*, 907 S.W.2d at 810 (citing *Beare Co. v. Tennessee Dep't of Revenue*, 858 S.W.2d 906 (Tenn. 1993)). Thus, unlike the agency's findings of fact, the agency's construction of a statute and application of the law to the facts of the case are subject to *de novo* review. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

The purposes of the Rehabilitation Act are as follows:

(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society [and]

. . . .

(2) to ensure that the Federal Government plays a leadership role in

promoting the employment of individuals with disabilities, especially

individuals with significant disabilities, and in assisting States and

providers of services in fulfilling the aspirations of such individuals with

disabilities for meaningful and gainful employment and independent living.

29 U.S.C.A. § 701(b) (1999). State programs funded under the Rehabilitation Act are "designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that such individuals may prepare for and engage in gainful employment." 29 U.S.C.A. § 720(a)(2)(B) (1999).

We must first determine what was intended by Congress when it stated that one purpose of the Rehabilitation Act is "to empower individuals with disabilities to maximize employment." 29 U.S.C.A. § 701(b)(1) (1999). It is the position of Mr. Truss that this language requires the Department to offer services to him that will increase his employability to the utmost extent, thereby allowing him to reach his highest level of achievement. This argument assumes that Mr. Truss is entitled to have access to the best possible education in his chosen area of study. The Department contends, however, that the "maximize" language of the Act does not guarantee actual optimal employment but instead requires the Department to provide services that will allow Mr. Truss the opportunity to obtain such employment.

In support of his position, Mr. Truss relies on *Buchanan v. Ives*, 793 F. Supp. 361 (D. Me. 1991). In *Buchanan*, the physically disabled plaintiff applied for rehabilitative services from and was accepted as a client of the Maine Bureau of Rehabilitation ("Bureau"). *See id.* at 362-63. The plaintiff then completed an "Individual Written Rehabilitation Plan," which established a goal for the plaintiff of self-employment in the field of commercial photography. *See id.* The plaintiff subsequently requested certain services to assist him in the achievement of this goal but the Bureau declined to provide the services. *See id.* at 363. On appeal of the Bureau's decision, the plaintiff argued that the Rehabilitation Act requires participating states to provide assistance to disabled individuals "so that they may achieve their maximum vocational potential." *Id.* at 364. With respect to the "maximize" language

contained in the Act, the court in *Buchanan* held as follows:

> On its face, Section 701 requires a state to "maximize" the employability of individuals with handicaps. While "maximize" is not defined in the statute, it is commonly understood to mean "to increase to the utmost extent." . . . "Absent a clearly expressed legislative intention to the contrary, [the plain meaning] will ordinarily be regarded as conclusive." . . . Defendants contend that in adding "maximize" the Committee simply intended to urge states to place their clients in full-time employment, rather than part-time employment, whenever possible. A reading of the legislative history compels a contrary conclusion. . . . The legislative history shows that the new language was instituted to clarify the overall purpose of the act in assisting individuals with handicaps "in reaching their highest level of achievement." . . . By adding "maximize" to § 701, Congress was clearly stating its intent to establish a program which would provide services to assist clients in achieving their highest level of achievement or a goal which is consistent with their maximum capacities and abilities.

*Id.* at 365 (citations and footnote omitted).

In *Zhinger v. Department of Aging and Disabilities*, 664 A.2d 256 (Vt. 1995), the disabled petitioner obtained a master's degree in business administration, passed an examination to be certified as a public accountant, and subsequently applied for assistance in obtaining employment from the Vermont Division of Vocational Rehabilitation ("Division"). *See id.* at 257. Although the Division determined that the petitioner was eligible for its services, it rejected the petitioner's request for some

$40,000.00 worth of computer equipment. *See id.* On appeal from the Division's decision, the petitioner argued that, consistent with *Buchanan*, the Rehabilitation Act requires the Division to " maximize his employability" without regard to financial considerations. *See id.* The court disagreed, holding that "[a]lthough the computer system requested may enhance petitioner's employability, petitioner has not shown that such a system is necessary for him to be employed." *Id.* at 259-60. Additionally, in *Murphy v. Office of Vocational and Educational Services for Individuals with Disabilities, New York State Education Department*, 705 N.E.2d 1180 (N.Y. 1998), the disabled appellant applied for and received assistance in obtaining an undergraduate degree from the Office of Vocational and Educational Services for Individuals with Disabilities ("VESID"). *See id.* at 1181. The appellant subsequently enrolled in law school and requested that VESID pay certain costs associated with her law school education. *See id.* VESID rejected this request. *See id.* On appeal, the court framed the issue as whether, under the Rehabilitation Act, VESID is required to provide services to a qualified individual for so long as the individual has not yet attained optimal employment or rather, whether the requirements of the Act are satisfied when the individual is aided to the extent that allows the opportunity for personal attainment of maximum employment. *See id.* The court found that "the realistic and laudable legislative goal is to empower eligible individuals with the opportunity to access their maximum employment, not to provide individuals with idealized personal preferences for actual optimal employment." *Id.* The court further noted the absence of language in the Rehabilitation Act guaranteeing actual optimal employment. *See id.* at 1183. Finally, after discussing the legislative history of the Act, the court concluded as follows:

> [W]hile the Act contains the "maximize employment" language to which appellant adverts, Congress deliberately chose to implement a qualification standard that required an "empowerment" toward, rather than "achievement" of, "maximum employment."
> . . . .
>
> These invocations of the Act's statutory purpose and policy statements manifest to us a determined Congressional intent to set some realistic boundaries to the scope of the Act, including specifically, empowerment

of individuals by "providing them with the tools" and placing them in a position, competitive to that of nondisabled peers, so they might have the equal opportunity to achieve "maximum employment." ". . . [T]here is no requirement that VESID sponsor every possible credential desired by petitioner." Indeed, we agree that "the Act should not be interpreted to require that in every case the client's optimum level be reached."

*Id.* at 1184 (citations omitted).

After careful consideration of the aforementioned cases construing the "maximize" language contained in the Rehabilitation Act, we are inclined to reject the rationale used by the court in *Buchanan* in favor of the reasoning adopted by the courts in *Zhinger* and *Murphy*. Accordingly, we agree that when Congress stated that one purpose of the Act is to "empower individuals with disabilities to maximize employment," it did not intend that such individuals are entitled to receive the best possible education as suggested by Mr. Truss. Such a result would not only be financially infeasible, but would also hinder the ability of participating states to provide services to large numbers of disabled individuals. Rather, we think that, in using this language, Congress intended to require participating states to offer services to disabled individuals designed to render such individuals capable of attaining meaningful and gainful employment.[3] Once such employment is attained, the disabled individual is then empowered with the opportunity to obtain his or her maximum employment as required by the Act.

We next consider whether, under the facts of the case at bar, Mr. Truss would be rendered capable of attaining meaningful and gainful employment in the field of computer animation if he attended and received a degree from Roane State. In a letter admitted as an exhibit during Mr. Truss's full administrative hearing, Anne Powers[4] made a number of comments regarding the computer art and design program at Roane State. Ms. Powers stated that, after comparing the courses offered by Roane

State with the courses offered by AIA, she was of the opinion that the two programs are "pretty much the same overall." She also expressed her belief that Roane State is gaining a well-respected name in the field of computer design, noting that the school was recently included on the Tennessee Film Commission's demo reel. Ms. Powers further stated that Roane State has excellent twenty-four hour lab facilities for computer art and animation. Additionally, according to Ms. Powers, students at Roane State have unlimited access to a wealth of software on high ram Macintosh computer systems, 3D MAX on Pentium Pro NT workstations, and Alias software on a Silicon Graphics workstation. She added that Roane State has complete facilities for broadcast video output and a magazine quality Xerox color copier / Fiery server in-lab. Ms. Powers further stated that the instructors at Roane State have MFA degrees and estimated that the student-instructor ratio at Roane State is smaller than the student-instructor ratio at AIA. There is no dispute that a degree from AIA would enable Mr. Truss to meet his goal of employability in the field of computer animation. As stated above, the field supervisor specifically found that Roane State offers a program in graphic arts comparable to the program offered by AIA. Because it is supported by substantial and material evidence in the record, we uphold this finding. Accordingly, we conclude that, if Mr. Truss attended and received a degree through Roane State's computer art and design program, he should be equipped with the skills to attain meaningful and gainful employment in the field of computer animation.

Finally, we consider whether the Department acted properly in agreeing to sponsor Mr. Truss's education at the rate of tuition charged by UTK rather than the higher tuition rate charged by AIA. Federal regulations applicable to the Rehabilitation Act set forth the rule to be applied when a disabled individual chooses to receive out-of-state rather than in-state services, as follows:

> The State unit may establish a preference for in-State services, provided
>
> that the preference does not effectively deny an individual a necessary
>
> service. If the individual chooses an out-of-State service at a higher cost

than an in-State service, if either service would meet the individual's rehabilitation needs, the designated State unit is not responsible for those costs in excess of the cost of the in-State service.

34 C.F.R. § 361.50(a)(1) (1998). We have previously determined that Mr. Truss's rehabilitation needs would be satisfied upon receiving a degree from either Roane State or AIA. Thus, we do not think that Mr. Truss has been denied a necessary service as a result of the Department's decision to limit his sponsorship to the tuition rate charged by UTK. Mr. Truss had the opportunity to pursue his goal of employment in the field of computer animation by attending Roane State but instead elected to attend AIA, a more expensive institution. Because Mr. Truss's rehabilitation needs could have been met by attending Roane State, we conclude that the Department is not required to pay the educational costs incurred by Mr. Truss in excess of those that would have been incurred had he chosen to attend an in-state institution.

Based on the foregoing, the ruling of the chancery court, which upheld the decision of the Department to limit its sponsorship of Mr. Truss to the tuition rates charged by UTK, is affirmed. Costs on appeal are charged to Mr. Truss, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J.

_____

KOCH, J.